# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| VICTOR DeMAIO and<br>DON TANGWALL,<br><br>Plaintiffs,<br><br>vs.<br><br>WOODROW WEITZEIL,<br>KENT SIPE, SHAWN LESNIK,<br>DONNA MARSH,<br>RANDAL SPAULDING,<br>BONNIE DeMAIO, individually,<br>jointly, and severally,<br><br>Defendants. | CV-11-56-BLG-RFC-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiffs Victor DeMaio ("V. DeMaio") and Don Tangwall
("Tangwall"), both appearing *pro se*, are suing defendants under 42
U.S.C. § 1983 (hereafter "§ 1983") alleging various claims apparently
stemming from V. DeMaio's arrest and prosecution for stalking and
disorderly conduct. *Cmplt. (Court Doc. 1) at ¶¶ 1, 11-21, 23, 30, 37-38,
44-45, 51-52, and 58-61.*

Defendants are as follows: Woodrow Weitzeil ("Weitzeil") is the

Musselshell County Sheriff; Kent Sipe ("Sipe") is the Musselshell

County Attorney; Shawn Lesnik ("Lesnik") is a Musselshell County deputy sheriff; Donna Marsh ("Marsh") is a Musselshell County Justice of the Peace; Randall Spaulding ("Spaulding") is a Montana state district court judge; and Bonnie DeMaio ("B. DeMaio") is V. DeMaio's ex-wife. *Id. at ¶¶ 5-10.*

The following motions are pending:

1. Weitzeil's, Lesnik's, and Marsh's motion to dismiss (*Court Doc. 7*);

2. B. DeMaio's motion to dismiss (*Court Doc. 11*);

3. Spaulding's motion for summary judgment (*Court Doc. 14*); and

4. Sipe's motion for summary judgment (*Court Doc. 18*).

Having reviewed the record, together with the parties' arguments in support of their positions, the Court recommends that the listed motions be granted.

## I. BACKGROUND and PLAINTIFFS' CLAIMS

V. DeMaio and Tangwall allege in their Complaint as follows:

V. DeMaio and B. DeMaio currently have a divorce proceeding in Montana state district court in Yellowstone County as case number DR-56-2007-0000799DV. *Court Doc. 1 at ¶ 11.* On March 16, 2011, V.

DeMaio attempted to serve papers from their divorce case upon B. DeMaio, but undersheriff Goffena ("Goffena")[1] "stopped the service in the Sheriff's office." *Id. at ¶ 12.*

On or before March 21, 2011, Goffena gave County Attorney Sipe sworn testimony about this incident that Sipe used to prepare a criminal complaint charging V. DeMaio with misdemeanor offenses of stalking and disorderly conduct. *Id. at ¶ 15; Court Doc. 1-1 at 4-6.* The complaint requested that an arrest warrant be issued. *Court Doc. 1-1 at 6.*

On March 22, 2011, Justice of the Peace Marsh issued an arrest warrant for V. DeMaio. *Court Doc. 1 at ¶ 13; Court Doc. 1-1 at 1-3, 6.* On March 23, 2011, Marsh entered a temporary order of protection naming B. DeMaio as the "petitioner/protected person" and V. DeMaio as the "respondent." *Court Doc. 1 at ¶ 16; Court Doc. 1-2 at 1-7.*

On March 24, 2011, deputy sheriff Lesnik arrested V. DeMaio on the arrest warrant. *Court Doc. 1 at ¶ 14; Court Doc. 1-1 at 3.*

On March 31, 2011, "Tangwall entered an appearance for . . . V.

---

[1]Goffena is not a party to this action.

DeMaio in case number CV-2011-149 OP, per MCA 25-31-601[.]" *Court Doc. 1 at ¶ 17.*

On April 7, 2011, state district court judge "Spaulding pirated the case from Marsh and entered an Order" setting a show cause hearing on Marsh's temporary order of protection and denying V. DeMaio's representation by Tangwall, a non-lawyer. *Id. at ¶ 18; Court Doc. 1-4 at 1-3.* Spaulding "threaten[ed]" Tangwall with contempt of court if he again attempted to represent DeMaio in proceedings in Spaulding's court. *Court Doc. 1 at ¶ 20; Court Doc. 1-4 at 2.*

On April 22, 2011, Spaulding granted the temporary order of protection as a permanent order. *Court Doc. 1 at ¶ 21; Court Doc. 1-6.*

For their specific claims, V. DeMaio and Tangwall allege the following for each of the six named Defendants:

(1) Sheriff Weitzeil is liable because "[a]ll actions taken by Goffena, and Lesnik were under direct orders of Weitzeil as their respondent superior[,]" *Court Doc. 1 at ¶ 23;*

(2) Sipe is aware that Goffena is Marsh's son-in-law and Sipe nevertheless persisted "[i]n a calculated, malicious effort to deprive V.

DeMaio of his rights" by filing the complaint against DeMaio with Marsh, *id. at ¶ 30*;

(3) Lesnik "forced entry" into V. DeMaio's home, "handcuff[ing,] kidnapp[ing,] and arrest[ing]" him "without a warrant in hand[,]" and did not read him his rights under *Miranda*, *id. at ¶¶ 37-38*;

(4) Marsh failed to remove herself from the action in which her son-in-law, Goffena, is a witness, and "failed to record her certificate of completion of judge's course with the Clerk and Recorder of Musselshell County," *id. at ¶¶ 44-45*;

(5) Spaulding "pirated" V. DeMaio's case from justice court in violation of Montana's rules for justice courts and, "with no basis for his jurisdiction of the case," entered an order "denying Tangwall his rights to represent V. DeMaio[,]" *id. at ¶ 51-52*; and

(6) B. DeMaio "purposely withheld from . . . Weitzeil, Goffena, Lesnik, Marsh, and Spaulding, the fact that there is currently pending a divorce proceeding between Bonnie and V. DeMaio[,]" "willingly and maliciously with intent to cause V. DeMaio great harm . . . publicly announc[ed] she hope[s] he dies sooner than later[,]" *id. at ¶¶ 58 and*

*60.*

Finally, except with respect to B. DeMaio, V. DeMaio and Tangwall claim that all Defendants are not "bonded" as required under Montana law.  *Id. at ¶¶ 24, 32, 39, 46, and 53.*

For their relief, V. DeMaio and Tangwall seek $500,000.00 from each Defendant and costs of this action.  *Id. at ¶¶ 25-26, 33-34, 40-41, 47-48, 54-55, and 63-64.*

## II.  LEGAL STANDARDS FOR PENDING MOTIONS

### A.  Motions to Dismiss

The Court evaluates Rule 12(b)(6)[2] motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, ___ U.S. ___, *129 S. Ct. 1937, 1949 (2009)* (internal quotation marks and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[2]All references to rules herein are to the Federal Rules of Civil Procedure unless otherwise indicated.

conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." *Bell Atlantic Corp. v. Twombly*, *550 U.S. 544, 555 (2007)* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 557*).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 570*). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, *550 U.S. at 556*). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id.* Furthermore, the Court is not obligated to accept as true "legal conclusions" contained in the complaint. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 1950.

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, *551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)*; *Cf. Fed. R. Civ. P. 8(f)* ("All pleadings shall be so construed as to do substantial justice").

### B.    Summary Judgment Motions

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden

then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. Again, the opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

III. **DISCUSSION**

A. **Weitzeil's, Lesnik's, and Marsh's Motion to Dismiss and B. DeMaio's Motion to Dismiss**

Weitzeil, Lesnik, and Marsh argue that: (1) not being bonded as required under Montana law does not establish the violation of a constitutionally-protected right of Plaintiffs sufficient to state a claim under 42 U.S.C. § 1983, *Defts Weitzeil, Lesnik, and Marsh's Br. in Support of Mtn. to Dismiss (Court Doc. 8) at 6*; (2) because Goffena and Lesnik did not violate Plaintiffs' constitutionally-protected rights, Weitzeil cannot be liable for violating Plaintiffs' rights, even if Weitzeil ordered Goffena's and Lesnik's conduct, *id. at 6-8*; (3) Plaintiffs' allegations that Lesnik executed an arrest warrant issued for V. DeMaio and failed to read him his rights fail to state a claim because: (a) Lesnik enjoys qualified immunity; (b) he was not required to have the arrest warrant "in hand"; and (c) failure to read Miranda warnings alone is not grounds for a § 1983 action, *id. at 8-12*; and (4) Marsh enjoys judicial immunity from Plaintiffs' claims, there is no

requirement that completion of judicial training be recorded, and failure to complete or record such training fails to state a claim for violation of constitutional rights under § 1983, *id. at 12-15*.

B. DeMaio argues that Plaintiffs have failed to state a claim against her upon which relief can be granted. *Deft B. DeMaio's Br. in Support of Mtn. to Dismiss (Court Doc. 12) at 1-4.* She argues that because Plaintiffs cannot demonstrate that she was acting under color of state law, they cannot maintain an action against her under § 1983. *Id. at 3-4.*

Weitzeil, Lesnik, and Marsh filed their motion on June 1, 2011. *Court Doc. 7.* DeMaio's and Tangwall's response to this motion was due on June 22, 2011. *Local Rule 7.1(d)(1)(B)* ("Responses to motions to dismiss, . . . or for summary judgment must be filed within twenty-one (21) days after the motion was filed.").

B. DeMaio filed her motion on June 3, 2011. *Court Doc. 11.* V. DeMaio's and Tangwall's response to this motion was due on June 24, 2011. *Local Rule 7.1(d)(1)(B).*

V. DeMaio and Tangwall failed to respond to either motion or to

seek an extension of time to respond.  The time for doing either with respect to either motion passed more than two full weeks ago.  When a party opposing a motion fails to file a response, as here, the Court has the discretion to deem the failure "an admission that the motion is well-taken." *Local Rule 7.1(d)(1)(B).*

Before recommending that these Defendants' motions to dismiss be granted, the Court must consider five factors: "(1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases [on] their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995)  (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)).  In *Ghazali*, the Ninth Circuit affirmed a dismissal, pursuant to a district court local rule similar to Local Rule 7.1(d)(1)(B), for failure to respond to a Rule 12(b)(6) motion to dismiss.  Courts reached similar results in *Lund v. Brenner*, 163 F.3d 606 (9th Cir. 1998) (table) and *Roberts v. United States*, 2002 WL 1770930 (D. Nev. 2002).

Like the authorities above, after consideration of the *Henderson*

factors, the Court concludes that dismissal of claims against these moving Defendants is appropriate. The first factor weighs strongly in favor of dismissal. At this juncture in the proceedings, dismissal will promote the public's interest in expeditious resolution of litigation. This is particularly true where, as here, the parties bringing the action, after merely filing it, have failed to prosecute it further.

The second factor weighs strongly in favor of dismissal. Plaintiffs' failure to respond to these Defendants' motions undermines the Court's ability to expedite resolution of the action. *See Saba v. Caplan,* 2010 WL 4235473 (N.C. Cal. 2010) (motion to dismiss granted where plaintiff failed to respond). Such non-compliance with Court rules inherently delays resolution of the case and insures detriment to other litigants. This Court's ability to manage its docket is enhanced when, in the exercise of its discretion, it is permitted to summarily dispose of cases brought by litigants, such as Plaintiffs here, who fail to respond to dispositive motions or to follow the Court's Local Rules.

The third factor weighs in favor of dismissal. Weitzeil, Lesnik, Marsh, and B. DeMaio, as Defendants in this action, should suffer no

prejudice by the dismissal of Plaintiffs' claims against them.

The fourth factor generally weighs against dismissal for failure to file a brief. This policy lends little support, however, to those parties responsible for moving a case forward but whose conduct impedes progress in that direction. In *Metcalf v. Select Portfolio Servicing, Inc.,* 2011 WL 1768755 (S.D. Cal. 2011), the court noted that "[a] case cannot move toward resolution on the merits when Plaintiff fails to defend his case against a Rule 12(b)(6) and (e) motion." The Court is not required, as it would be in granting a motion for summary judgment under these circumstances, to consider the sufficiency of Defendants' motions to dismiss. *See Ghazali*, 46 F.3d at 54; *see also Henry v. Gill. Ind., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993).

Finally, as to the fifth factor, it is possible that the Court could adopt less drastic sanctions by, *sua sponte*, ordering the V. DeMaio and Tangwall to file responses to the motions. But the Court is reluctant to do so for the following reasons. First, the other factors weigh strongly in favor of dismissal.

Second, V. DeMaio and Tangwall brought this action. Although the Court must afford pro se litigants' pleadings liberal construction,

such litigants are nevertheless "bound by the rules of procedure" the same as other litigants. *Ghazali*, 46 F.3d at 54. By bringing this action, V. DeMaio and Tangwall have assumed an affirmative responsibility to participate in the proceedings in accordance with the rules. Their failure to do so imposes a strain on judicial resources and, more significantly, works unfair prejudice upon Defendants compelled to appear to defend themselves. The Court concludes that the fifth *Henderson* factor weighs in favor of dismissal.

Thus, the Court concludes after consideration of the *Henderson* factors that the motions to dismiss brought by Weitzeil, Lesnik, Marsh, and B. DeMaio should be granted. In so recommending, the Court notes that deficiencies in Plaintiffs' Complaint cannot be cured by amendment in light of the type of action and the nature of relief sought.

### B. Spaulding's and Sipe's Summary Judgment Motions

Spaulding argues generally that Plaintiffs have failed to state a cognizable claim against him and that he is entitled to summary judgment under Rule 56. *Spaulding's Br. in Support of Mtn. for Summary Judgment (Court Doc. 15) at 2.* Specifically, Spaulding argues that Plaintiffs' action: (1) fails to state a cognizable claim under

§ 1983 because their allegations that Spaulding lacked jurisdiction over the protection order, violated Tangwall's right to represent V. DeMaio, and is not bonded all fail to allege violation of a constitutional or federal right, *id. at 2-3*; (2) is barred by Eleventh Amendment immunity because Plaintiffs seek damages from Spaulding in his official capacity, *id. at 3-5*; (3) fails because Spaulding, in his official capacity, is not a "person" subject to suit under § 1983, *id. at 5*; (4) is barred because Spaulding enjoys absolute judicial immunity, *id. at 6-8*; (5) is barred because Spaulding is entitled to qualified immunity, *id. at 8-9*; and (6) fails to state a claim under MCA § 2-9-701 because Spaulding is exempt from state employee bonding requirements, *id. at 9-10*.

Sipe argues generally that Plaintiffs have failed to state a cognizable claim against him and that he is entitled to summary judgment under Rule 56. *Sipe's Br. in Support of Mtn. for Summary Judgment (Court Doc. 19) at 2.* Specifically, Sipe argues that Plaintiffs' action: (1) fails to state a cognizable claim under § 1983 because their allegation that Sipe should have filed the criminal complaint against V. DeMaio with another judge does not allege the violation of a

constitutional or federal right, *id. at 2-3*; (2) is barred by Eleventh Amendment immunity because Plaintiffs seek damages from Sipe in his official capacity, *id. at 4-5*; (3) fails because Sipe, in his official capacity, is not a "person" subject to suit under § 1983, *id. at 5*; (4) is barred because Sipe is entitled to absolute prosecutorial immunity, *id. at 6*; and (5) is barred because Sipe is entitled to qualified immunity, *id. at 6-7*.

Spaulding filed his summary judgment motion on June 8, 2011. *Court Doc. 14.* V. DeMaio's and Tangwall's response was due June 29, 2011. *Local Rule 7.1(d)(1)(B).* They failed to respond.

Sipe filed his summary judgment motion on June 9, 2011. *Court Doc. 18.* V. DeMaio's and Tangwall's response was due June 30, 2011. *Local Rule 7.1(d)(1)(B).* They failed to respond.

Despite DeMaio's and Tangwall's failure to respond to either Spaulding's or Sipe's motions, the Court is required to consider the sufficiency of the summary judgment motions. *See Ghazali*, 46 F.3d at 54; *see also Henry*, 983 F.2d at 949-50. For the reasons that follow, the Court concludes that the summary judgment motions are well-taken and recommends that they be granted.

First, with respect to Spaulding's motion, judicial immunity bars Plaintiffs' claims. Judges enjoy absolute immunity from lawsuits for actions taken in their official judicial capacity. *Mireles v. Waco, 502 U.S. 9, 9-10 (1991); Moore v. Brewster, 96 F.3d 1240, 1243-44 (9ᵗʰ Cir. 1996) (superceded by statute on other grounds).* "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles*, 502 U.S. at 11. As such, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.*

"Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of 'appellate procedures as the standard system for correcting judicial error ... Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review.'" *In re Castillo, 297 F.3d 940, 947 (9ᵗʰ Cir. 2002) (citation omitted).* This immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (citation omitted).* "Grave procedural errors or acts in excess of

judicial authority do not deprive a judge of this immunity." *Schucker v.*
*Rockwood, 846 F.2d 1202, 1204 (9ᵗʰ Cir.), cert. denied, 488 U.S. 995*
*(1988) (quoting Stump v. Sparkman, 435 U.S. 349, 35-57 (1978)).*

Two principal exceptions exist to judicial immunity: first, when a
judge acts outside of his or her judicial capacity; and second, when a
judge's action, "though judicial in nature, is taken in the complete
absence of all jurisdiction." *See Mireles*, 502 U.S. at 11-12.

In the case at hand, neither of the recognized exceptions to
application of judicial immunity applies. First, Plaintiffs' allegations
against Spaulding relate directly to actions taken in his official capacity
as a judge. Plaintiffs concede this through their allegations that
Spaulding's actions about which they complain were done in active
court cases. *Court Doc. 1 at ¶¶ 50-52 (citing Exhibits D and E).*

Second, Spaulding's acts about which Plaintiffs complain were
well within his jurisdiction as a state district court judge. Montana law
specifically provides that the district courts are "courts of justice of this
state[.]" § 3-1-101, MCA; *see also* MONT. CONST., art. VII, § 1 ("The
judicial power of the state is vested in . . . district courts . . . and such
other courts as may be provided by law"). Also, with respect to the

order of protection, Montana law provides that either party may remove temporary order-of-protection matters to the district court prior to or after the hearing, which occurred here. *See* § 40-15-301(3) and § 40-15-302(2), MCA; *Court Doc. 16-2 at 28* (B. DeMaio letter requesting that "Temporary Order of Protection, issued by Justice Court, be removed . . . and forwarded to Musselshell County District Court[.]").

Montana's Constitution provides that district court's have "original jurisdiction in . . . all civil matters and cases at law and in equity." MONT. CONST., art. VII, § 4. In addition, Montana statutory law provides that judicial officers of the state district courts have the power to "preserve and enforce order . . . in proceedings before the officer when the officer is engaged in the performance of official duties [and] . . . compel obedience to the officer's official orders[.]" § 3-1-402, MCA.

In sum, Plaintiffs' claims against Spaulding all stem from acts he performed in his judicial capacity and within his jurisdiction as a state district court judge. Thus, Spaulding is entitled to judicial immunity and the Court recommends that his summary judgment motion be granted. In so recommending, the Court notes that the deficiencies in

Plaintiffs' Complaint cannot be cured by amendment in light of the type action and the nature of the relief sought.

Second, with respect to Sipe's summary judgment motion, prosecutorial immunity bars Plaintiffs' claims. A state prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when they engage in activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Specifically, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424 U.S. at 431. Absolute immunity protects a prosecutor's activities unless the prosecutor steps outside their role as an advocate, such as acting as a complaining witness. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (prosecutor's act of personally certifying truthfulness of statements in an application for an arrest warrant not protected by absolute immunity).

Plaintiffs' allegations against Sipe stem from his filing a complaint and seeking an arrest warrant in a criminal proceeding, activities intimately associated with the judicial phase of the criminal

process.  Nothing in Plaintiffs' allegations suggest Sipe stepped out of his role as an attorney for Musselshell County.  *See Kalina*, 522 U.S. 118; *Imbler*, 424 U.S. at 430.  Therefore, Sipe is entitled to absolute prosecutorial immunity.  Accordingly, the Court recommends that his summary judgment motion be granted.  In so recommending, the Court notes that the deficiencies in Plaintiffs' Complaint cannot be cured by amendment in light of the type of action and the nature of the relief sought.

IV.  **<u>CONCLUSION</u>**

For the foregoing reasons, IT IS RECOMMENDED that:

1.  Weitzeil's, Lesnik's, and Marsh's motion to dismiss (*Court Doc. 7*) be GRANTED;

2.  B. DeMaio's motion to dismiss (*Court Doc. 11*) be GRANTED;

3.  Spaulding's motion for summary judgment (*Court Doc. 14*) be GRANTED; and

4.  Sipe's motion for summary judgment (*Court Doc. 18*) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 7th day of July, 2011.


/S/ Carolyn S. Ostby
United States Magistrate Judge